**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WILLIAM BANE, #270-937 *

Plaintiff *

v * Civil Action No. JFM-06-576

MARY ANN SAAR, et al., *

Defendants *

******

**MEMORANDUM**

This civil rights action, filed on March 6, 2006, alleges that plaintiff has been improperly denied "work credits" due to his health conditions.[1] He seeks compensatory damages and injunctive relief. Paper No. 1. Counsel for defendants J. Michael Stouffer, Mary Ann Saar, and Howard Whittington and counsel for defendant Linda Tritsch have filed dispositive motions.[2] Paper Nos. 13, 17, and 19. Plaintiff has filed a response. Paper Nos. 20 and 22.[3] No hearing is needed to resolve the question as to whether plaintiff is entitled to relief. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, defendants' Motions to Dismiss and/or for Summary Judgment, construed as summary judgment motions, shall be granted.

---

[1]The claim has been construed both as a civil rights action pursuant to 42 U.S.C. § 1983 alleging violation of due process and equal protection, and as an action under the Americans with Disabilities Act, filed pursuant to 42 U.S.C. § 12131 *et seq*.

[2] Also pending is plaintiff's "Motion for Preliminary and Permanent Injunctive Relief." Paper No. 25. Plaintiff states that although eligible to be transferred to a lesser security facility, he has been "skipped" over due to his medical issues. He asks that this court enter an order directing the Division of Corrections to transfer him to a pre-release unit near University Hospital in Baltimore. Plaintiff's motion states a new and independent cause of action and shall not be considered by the court. If plaintiff believes that his rights have been violated due to the actions of Division of Corrections personnel in regard to the location of his housing,, he is free to file a new complaint.

[3]Plaintiff's opposition responses clarify that the instant complaint does not concern plaintiff's medical care.

**1. Background**

Plaintiff suffers from numerous health problems including degenerative joint disease of his lumbar and cervical spine, diabetes, chronic Hepatitis C and cirrhosis of the liver. Paper No. 13, Tritsch Affidavit. In May of 2004, plaintiff held a job in the prison as a teacher's assistant. On or about May 26, 2004, plaintiff asked Dr. Ikechukwu Mbonu to change his status to "medically unassigned." Under this designation an inmate is not given a work assignment due to a serious medical condition. *Id*. and Paper No. 17, Ex. 2. Dr. Mbonu understood, based on plaintiff's representations, that plaintiff's job position was a voluntary one, and granted plaintiff's request to be medically unassigned until further notice. *Id*., Ex. B.

On June 4, 2004, plaintiff complained in writing to Warden Stouffer that he could not earn work credits while on medically unassigned status. Paper No. 17, Ex. 1. Upon investigation, the Warden learned that the medical department did not consider plaintiff "handicapped." He then advised plaintiff to come off medically unassigned status in order to be involved in more work and program options. *Id.*

The medically unassigned status was renewed by Dr. Mbonu on December 14, 2004. Paper No. 13, Tritsch Affidavit. On August 8, 2005, plaintiff asked to be assigned a job so that he could earn work credits. Because of plaintiff's degenerative joint disease, Dr. Mbonu recommended plaintiff be restricted to clerical work only. *Id*. On September 2, 2005, plaintiff submitted a sick call slip asking, among other things, that the medical staff classify him as disabled. *Id*., Ex. B. The medical staff determined that plaintiff was not so disabled that he could not work any job. Rather,

he was found able to perform light duties and clerical work.[4]

On December 16, 2005, plaintiff submitted a sick call slip addressed to Nurse Tritsch asking that he be assigned to the kitchen. Nurse Tritsch responded to the sick call slip on December 23, 2005, advising plaintiff that she had not received any paperwork from the kitchen indicating that the kitchen staff wanted him assigned there, and noting that plaintiff's medical conditions precluded him from working in the kitchen. To date, plaintiff has not been classified as disabled as he is able to perform light duties within the prison setting. *Id*.

## 2. Standard of review

### A. Summary Judgment

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson*, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

[4]According to the Affidavit of Nurse Tritsch, inmates earn industrial credits for light duty and clerical work at half the rate earned at more physically intensive jobs. Plaintiff's physical condition precludes him from performing the more physically intense jobs and permits him to only perform light duty assignments. Paper No. 13, Affidavit Tritsch .

## 3. Analysis

### A. Civil Rights Claim

Prisoners do not have a constitutionally protected right to work while incarcerated or to remain in a particular job once assigned. *See Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978). There is also no constitutionally inherent right to an award of industrial work credits while incarcerated, as inmates have no liberty interest in shortening their sentences by earning various diminution credits. *See Sandin v. Conner*, 515 U.S. 472 (1995). Plaintiff has no liberty interest in participating in a work program or receiving industrial work credits; thus, due process protections do not apply. *See Kitchen v. Upshaw*, 286 F. 3d 179, 188 (4th Cir. 2002).

To the extent plaintiff asserts that his rights under the Equal Protection Clause are being violated because he does not receive industrial credits and pay at the same rate as other prisoners who work at physically demanding institutional jobs, his claim fails. As already noted there is no constitutional right to a prison job assignment. Where, as here, no suspect class or fundamental right is implicated, prison officials may avoid violating equal protection principles if they can demonstrate that their reasons for treating an individual differently bear some rational relationship to a legitimate state purpose. *See McGinnis v. Royster*, 410 U.S. 263, 271 (1973). It is rational to reward those prisoners who perform physically demanding institutional jobs with pay and other benefits while withholding those benefits in part or in whole from those who do not work or work “light duty,” regardless of whether their inactivity is due to choice, unavailability of a job, or inability to perform a particular job.

**B. Americans with Disabilities Act**

In order to state a claim under the Americans with Disabilities Act,[5] a plaintiff must show: (1) that he is a person with a disability as defined by the statute; (2) that he is otherwise qualified for the benefit he claims to have been denied; and (3) that he was excluded from the benefit due to discrimination based on disability. *See Doe v. University of Md. Medical Systems Corporation*, 50 F.3d 1261, 1265 (4th Cir. 1995); *see also* 42 U.S.C. § 12131 *et seq.*

To meet the definition of "disability" under the ADA a plaintiff must show: 1) a physical or mental impairment; 2) that substantially limits; 3) one or more of his major life activities.[6] 42 U.S.C. § 12102(2). Here, plaintiff has not been found to be disabled within the meaning of the ADA. The record demonstrates that despite plaintiff's numerous ailments, he held a prison job until he requested placement on medical unassigned status. The record further demonstrates that upon his request, plaintiff was authorized to return to work performing light duty or clerical work. The medical records before the court do not support plaintiff's bald assertion that he is "disabled."

Even if plaintiff could establish he were disabled under the ADA, his claim would still fail. In the only published decision addressing the applicability of the ADA to the award of diminution credits to prisoners, the United States District Court for the Northern District of Florida found that Florida regulations governing "gain time" violated the ADA as applied to some prisoners. *See Raines v. State of Florida*, 983 F. Supp. 1362 (N.D. Fla. 1997). Key to the Court's decision was the fact that although Florida law did not require prisoners to work at a prison job to receive the

[5]*See Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998) ( Title II of the ADA applies to state prisons).

[6]A plaintiff also may establish disability by showing a record of an impairment or that he is regarded as having an impairment.

maximum amount of credits allowed by law, the implementing regulations made it impossible for certain categories of prisoners to earn the maximum due to their medical classifications. 983 F. Supp. at 1373.

The instant case differs in two very important respects. First, Maryland has, by statute, defined different types of diminution credits and set certain minimum requirements for receiving the credits. To obtain industrial or work credits, a prisoner must manifest "satisfactory performance of assigned work tasks." Md. Code Ann., Corr. Srv. Art., §3-705(a). Second, a prisoner may receive the maximum number of diminution credits permitted by Maryland law without working at an institutional job.[7]

In order to prevail under the ADA, plaintiff must be an otherwise qualified individual who is excluded from participation in a program or denied a benefit because of his disability. *See Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). The ADA does not require that special programs or benefits be created for the disabled, only that they be placed on a equal footing with those who are not disabled. Plaintiff retains his ability to earn the maximum number of diminution credits, notwithstanding his assignment to light duty work status. Accordingly, there has been no discrimination against plaintiff as a disabled person, nor has there been a failure to provide him with a benefit to which he is otherwise entitled.

**4. Conclusion**

For all the foregoing reasons, defendants' motions for summary judgment shall be granted.

---

[7]Prisoners may earn up to twenty days diminution credit per month. Ann. Code Md., Corr. Serv. Art. §3-708. There are four different types of diminution credits - good conduct, industrial, educational and special project. By statute, prisoners automatically receive either five or ten days good conduct credit per month. § 3-704. Also by statute, they may earn five days industrial credit, five days educational credit and up to ten days special project credit per month. §§3-705, 3-706, and 3-707. Thus, a prisoner could earn the maximum twenty days per month through a combination of good conduct and special project credits or a combination of good conduct, educational and special project credits without working at an institutional job.

A separate Order follows.

February 12, 2007
Date

/s/
J. Frederick Motz
United States District Judge